# Exhibit A

RECEIVED
JUN 17 2024
By_____

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| SHANNON "BUCK" PHILLIPS, an individual, and DAVID HOLMES, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ENERGY NORTHWEST, a joint operating agency in the State of Washington,<br><br>Defendant. | No.   24-2-11760-1 SEA<br><br>COMPLAINT |

Plaintiffs Shannon "Buck" Phillips and David Holmes by and through their attorneys of record, Michael Maxwell of Maxwell Graham, PS and Peter Steilberg of Merrick, Hofstedt and Lindsey, P.S., allege the following cause of action:

## I.   PARTIES

1.1   Plaintiff Shannon "Buck" Phillips is a resident of Franklin County, Washington.

1.2   Plaintiff David Holmes is a resident of Florida.

1.3   Defendant Energy Northwest is a joint operating agency formed by the Washington state legislature in 1957 and is a consortium of 28 public utility districts and municipalities across the state of Washington.

COMPLAINT FOR DAMAGES - 1



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

## II.    JURISDICTION & VENUE

2.1   One of the public utility districts in the Energy Northwest consortium is Seattle City Light, the public utility providing electricity to Seattle, Washington, and parts of its metropolitan area, including all of Shoreline, nearly all of Lake Forest Park, and parts of unincorporated King County, Burien, Normandy Park, SeaTac, Renton, and Tukwila. Seattle City Light is a department of the City of Seattle and is governed by the Economic Development, Technology & City Light committee of the Seattle City Council. Through its consortium member Seattle City Light, Energy Northwest does business in King County, Washington.

2.2   The King County Superior Court has jurisdiction over all parties and over the subject matter of this Complaint and is the proper venue for this action.

2.3   On or about March 25, 2024, Plaintiff Shannon Phillips, through counsel, completed Energy Northwest's Tort Claim Form and caused it to be mailed, along with supporting documents, to Energy Northwest's Office of General Counsel at P.O. Box 968, Richland, WA 99352.

2.4   On or about March 25, 2024, Plaintiff David Holmes, through counsel, completed Energy Northwest's Tort Claim Form and caused it to be mailed, along with supporting documents, to Energy Northwest's Office of General Counsel at P.O. Box 968, Richland, WA 99352. The Tort Claim Form was signed by counsel for Shannon Phillips.

2.5   The Shannon Phillips Tort Claim Form was delivered to P.O. Box 968, Richland, WA99352 on March 27, 2024.

2.6   The David Holmes Tort Claim Form was delivered to P.O. Box 968, Richland, WA99352 on March 27, 2024.

COMPLAINT FOR DAMAGES - 2



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

2.7 The Tort Claim Forms satisfied all requirements of RCW 4.96.010 and .020. More than 60 days have passed since Energy Northwest's Office of General Counsel received Plaintiffs' Tort Claim Forms.

2.8 This action is ripe and RCW 4.96 does not bar Plaintiffs from proceeding.

### III.    FACTS AND CIRCUMSTANCES

3.1 Shannon "Buck" Phillips and David Holmes are qualified pipefitters. Mr. Phillips is a member of the United Association Pipefitter and Steamfitters Local 598 union hall. Mr. Holmes is a member of a local union in Florida. In 2021, Plaintiffs were dispatched out of United Association Pipefitter and Steamfitters Union and responded to calls for work through the Local 598 union hall.

3.2 In May 2021, Plaintiffs received and accepted an offer to work at the Columbia Generating Station (CGS)(Columbia), a nuclear power plant in Richland, Washington that is located on the Hanford Reservation.

3.3 Mr. Phillips and Mr. Holmes worked as employees of BHI, Bechtel Hanford Inc. who then assigned them, along with other employees, to work at CGS.

3.4 Neither Mr. Phillips nor Mr. Holmes had worked previously at CGS.

3.5 CGS is owned by Energy Northwest (ENW) and functions as a municipal corporation to provide at-cost electricity to Northwest Utilities.

3.6 The Columbia nuclear plant is licensed and regulated by the Nuclear Regulatory Commission (NRC). The plant operator, is referred to as "the Licensee." Licensed activities are docketed and maintained under NRC Docket 50-397. The license was originally granted on April 13, 1984, and renewed on May 22, 2012.

3.7 CGS, like all commercial nuclear power plants, requires refueling at regular intervals. During the refueling process the plant is shut down and the Reactor Vessel head removed to allow fuel rods to be replaced. Additionally, "down times", which are regular

COMPLAINT FOR DAMAGES - 3



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

preventative maintenance and other repairs or activities, are performed that can only be done when the plant is not operating.

3.8 These "down times" are referred to as Refueling Outages. To minimize the time that the plant is not operating i.e., not producing electricity, outage work is planned and scheduled down to the minute. Outages range in time but are usually around 30-45 days.

3.9 The events that serve as the basis for this complaint occurred during Refueling Outage 25 during the spring of 2021.

3.10 All work done at CGS is strictly regulated, and must be performed in accordance with federal regulations, which are set forth in company documents, procedures, work planning, that specify the details of who can perform the work, how the work will be done, and how the work will be verified as having been performed in compliance with the regulations.

3.11 All work done at nuclear plant is required to be planned, scheduled, staffed, and performed in a manner that keeps radiation exposure to workers "as low as reasonably achievable" (ALARA).

3.12 There are regulatory requirements and company procedures apply to planning, scheduling, and staffing the work. These regulations are incorporated in the nuclear plant's Operating License through its Technical Specifications and implemented through the company procedures, which are incorporated into the license.

3.13 Regulations require, in part, that the Licensee "shall use, to the extent possible, process or other engineering controls to control the concentration of radioactive material in the air." 10 CFR 20.1701.

3.14 Recognizing that work is done in a radiation environment, the regulations and procedures also specify the requirements that Licensees must follow if employees become exposed to radiation.

COMPLAINT FOR DAMAGES - 4



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

3.15  If there is an incident in which workers at the plant become exposed to excessive radiation there are rigid requirements that the Licensees must follow to mitigate the radiation exposure, testing of the exposed employee to determine levels of exposure and advise the exposed employee of the information about his exposure.10 § CFR20.1502 and 20.1204.

3.16  On May 28, 2021, during Outage 25, an incident occurred associated with attempts to change out contaminated piping used to clean up contaminated reactor water. During the event, airborne radioactivity was released, and there were multiple confirmed uptakes of radioactive materials to 22 workers. This included high internal exposures of over 700 millirem of committed effective dose equivalent to Buck Phillips and David Holmes.

3.17  Specifically, on the nightshift starting on 05/28/202, the Rad Water Cooling Unit (RWCU) heat exchanger system piping (HIX) replacement project team was scheduled to perform pipe preparations for the stub end at cut location #3 (in the southwest corner of the RWCU HX room).

**Inadequate Work Planning**

3.18  The work involved pipefitters preparing the pipe for welding, under the constant coverage of a fully qualified senior Radiation Protection Technician (RPT). The surface preparation of the pipe stub end was to be performed inside of a glove bag connected to a HEPA filtered vacuum. The glove bag was equipped to have its own HEPA filter. The glove bag filter was no provided which caused it to collapse.

3.19  No personal or respiratory protection (PPE) would have been required for this work because it was supposed to be performed inside a containment bag. However, the prior dayshift was equipped with the appropriate containment bag, but Phillips and Holmes were not. Phillips and Holmes requested PPE and were denied the same.

COMPLAINT FOR DAMAGES - 5



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

3.20　There was a specific sequence of how the work was supposed to be performed, with a mockup of the areas created for training, there was also formal written plan to ensure that the work was performed as intended. Phillips and Holmes did not receive this written plan. They were instructed by their supervisor on how to perform the work; however, these verbal instructions did not comport with the written plan.

3.21　There was also a lack of communication within the Radiation Protection (RP) department. The prior dayshift was provided with a written procedure which directed them to use a glove bag equipped with a HEPA filter and a HEPA vacuum. The day shift crew was to place the glove bag over the end of the pipe to be cleaned before removing the plug. Once the glove bag was installed, and the vacuum was running the crew was able to remove the plug without being in danger of radiation contamination. The dayshift crew was not provided with a HEPA filter for the glove bag but managed to locate one in the mockup area. That was the last available filter.

3.22　The nightshift crew was not provided with a written procedure. Further, the RP had a duty to install the glove bag with a HEPA filter, to certify it met standards to protect workers from radiation, and certify it was ready for use. This did not occur. Instead, the RP directed Phillips and Holmes to install the glove bag without a HEPA filter and to cut a hole in the bag so it would not collapse. There was no HEPA filter available for the glove bag as the prior dayshift crew had used the last one. .

3.23　The RP, Mike Hendricks, and their supervisor, Jason Riddle, directed Holmes and Phillips to use a radiological waste bag which does not use a HEPA filter. The glove bag was supposed to have a HEPA filter but it did not have one either. Hendricks and Riddle directed Phillips and Holmes to simply pull the plug off the pipe and allow any water in the pipe to escape into the waste bag. This left the end of the pipe open to the atmosphere and risked potential radiation contamination. Phillips and Holmes expressed their concerns about radiation contamination and requested PPE. However, Hendricks and

COMPLAINT FOR DAMAGES - 6



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

Riddle told them PPE was not necessary and that they had already done a survey and there was no risk of radiation contamination.

**Inadequate Personnel Preparation**

3.24  The radiation technician (RPT) who was assigned to the job discovered that he could not physically access the area he would have to occupy to provide radiation monitoring.

3.25  He was replaced by another RPT, who had not attended the pre-job briefing for this job.

3.26  No proper radiation monitoring was verified by RP supervision as required by RP procedures.

**The Failure of the Vacuum Bag**

3.27  After the two pipefitters were in place on the scaffolding, the vacuum attached to the bag was turned on. It immediately collapsed.

3.28  The RP and workers on the job were unsure how to proceed, so the pipefitters turned the vacuum back off, and removed the vacuum hose from the bag.

**The Worked Continued Without Adequate and Required Work Controls**

3.29  During this time frame, more workers entered the room to do a "hot turn over."

3.30  Phillips and Holme removed the plug on the end of the pipe as directed by Hendricks and Riddle. The end of the pipe was open to the atmosphere and resulted in radiation escaping into and contamination the room.

3.31  Phillips and Holmes then proceeded with the work as instructed. The pipe preparation started with flapping of the pipe without the benefit of a vacuum or HEPA filters. Once the work was done, Phillips and Holmes taped off the glove bag and removed it leaving the end of the pipe covered with the remainder of the glove bag.

3.32  Phillips and Holmes then descended from the work platform to exit the area. Phillips wanted water to drink and was met at the exit by the Lead RP Technician Hendricks. He "wanded" Phillips to check his exposure level and said "oh shit" when he saw the

COMPLAINT FOR DAMAGES - 7



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

radioactive rating on his monitor. The Lead RP Technician then switched the level on the monitor to test higher levels of exposure and it read off the scale on each occasion.

3.33 After discovering Phillips and Holmes were contaminated, Hendricks then issued a Stop Work instruction and began to evacuate the rest of the remaining 20 workers from the room.

3.34 After the work stopped, technicians retrieved air samples (while wearing PPE) which had been collected during the work. These samples showed airborne conditions up to 33.4 DAC for beta/gamma radionuclides.

**The Exposure of the Phillips and Holmes and 20 Other Workers**

3.35 Because the workers exited the room through the airborne contamination area another 20 individuals received uptakes of the radiation around the pipe cutting area. .

3.36 After exiting from the area, surveying of personnel started, and contamination was found on 20 other workers besides Phillips and Holmes were found to have been exposed.

3.37 Hendricks gave water to Phillips and Holme which they drank.

3.38 Phillips and Holmes took numerous showers throughout the rest of the night shift hoping to remove external radiation exposure. However, neither were able to "clear" the radiation monitors. This meant that they had received an internal dose.

3.39 Thereafter, neither Phillips or Holmes were not allowed back into the secured area of the plant, or given any meaningful work to do, but required to just sit in an office for the duration of their shift.

3.40 BHI terminated the employment of Mr. Phillips within about a week and Mr. Holmes shortly thereafter.

3.41 The CGS medical department failed to follow regulatory and industry requirements for adequate testing, i.e., "suitable and timely measurements," to determine the amount of radiation they each had received. 10 CFR § 20.1204(a), industry standards, and Energy Northwest's own procedures. Neither had a fecal test done to determine the amount of

COMPLAINT FOR DAMAGES - 8



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

internal exposure each had received or the types of radiation they had been exposed to. Neither were sent to a medical facility with appropriate testing equipment and experience at the available Department of Energy (DOE) Hanford Reservation.

**The Root Cause Evaluations.**

3.42  After any accident or incident happens, the company is required to conduct internal investigations to determine what happened, why it happened, and what changes must be made to ensure it never happens again. These are generally referred to as "Root Cause Evaluations." Energy Northwest conducted a series of these investigations into the May 2021 radiation exposure incident.

3.43  Energy Northwest failed to interview Phillips or Holmes in any of the company's internal "root cause" investigation.

3.44  The company then presented the results of its alleged internal "root cause" investigation into the radiation exposure incident to the NRC on March 1, 2022, in a meeting (held by teleconference), that was open to the public. The meeting was announced by way of publication in the local newspaper, which indicated the meeting was scheduled to start in the early morning at 0700 PST.

3.45  Phillips listened to the Licensee's presentation about what allegedly happened on May 29, 2021, and why. Finding the information presented incomplete and inaccurate, he raised concerns in the public comment section of the meeting and publicly challenged the information that had been presented by Energy Northwest as inaccurate and incomplete.

3.46  After Phillips's disclosures, the NRC conducted further inspections and investigations into the event over the next 18 months. Following these inspections and investigations, the NRC found, and CGS has agreed, that the May 29, 2021, event was the result of the failure of the company to implement and follow written procedures for radiation

COMPLAINT FOR DAMAGES - 9



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

protection, poor work planning, the lack of engineering controls, and other failures to plan for a job consistent with its own procedures and NRC requirements.

3.47  One of the NRC inspections focused on the company's actions in planning and implementing the job in accordance with requirements. As a result of numerous findings of non-compliance and other violations the NRC issues a Notice of Violation (NOV) on June 1, 2023, proposing Enforcement Action (EA). This EA was identified as EA 21-170.

3.48  Specially on June 1, 2023, the NRC issued a notice of violation to Energy Northwest, Inc. for three violations, finding the licensee's failed to: 1) control work activities in a high radiation area with dose rates greater than 1.0 rem/hour at 30 centimeters; 2) develop surveys of areas that were reasonable under the circumstances to evaluate the magnitude and extent of radiation levels; and 3) use processes or other engineering controls to limit the concentration of radiation material in the air surrounding a work area. These failures are in violation of 10 CFR 20.1701, CGS's Technical Specifications, and 10 CFR 20.1501(a)(2), respectively, which resulted in an airborne radioactivity event and multiple confirmed cases of radiation exposure and/or uptakes of radioactive materials to 22 workers. EA 21-170 6-1-23. On December 14, 2023, Energy Northwest accepted these violations, along with another violation noted in a November 1, 2023, NRC final determination letter.

3.49  Another inspection resulted in a Notice of Violation and Enforcement Action on November 1, 2023, focused on the failure of the company to adequately test, monitor, and ensure that all actions were taken to timely identify the amount of internal radiation exposure to Phillips and Holmes, and the other workers. This was identified as NRC EA 23-054.

3.50  Specifically, on November 1, 2023, the NRC issued a Notice of Violation to Energy Northwest, Inc, finding that CGS failed to take suitable and timely measurements to

COMPLAINT FOR DAMAGES - 10



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

adequately assess the internal dose of two pipefitters after the RCWU contamination event. This failure resulted in a violation of Title 10 of the *Code of Federal Regulations* 20.1204 "Determination of internal exposure." EA 23-054 11-1-23. Energy Northwest accepted this violation in a December 14, 2023, letter to the NRC.

3.51 As part of the acceptance of the NRC's findings, Energy Northwest issued new "Form 5" radiation exposure reports on December 28, 2023, confirming that both Phillips and Holmes had higher intake results than originally reported, and that they were exposed to Plutonium 238/239, among other radionuclides. All of the radiation, especially Plutonium, are known carcinogens.

3.52 As a result of the excessive exposure to radiation during the May 29, 2021, event, both Phillips and Holmes have experienced damages, including radiation sickness and emotional distress.

## IV.    CAUSES OF ACTION

4.1 The conduct of Defendants as described above, constitutes negligence and gross negligence, for which Defendants owe damages to Plaintiffs.

4.2 Defendants owed Plaintiffs a duty to exercise ordinary care.

4.3 Defendant's failure to exercise ordinary care was a breach of that duty. Defendant's failure to comply with the above-described protocols and regulations constituted evidence of their breaches of the standard of care.

4.4 Defendant's breach exposed Mr. Phillips and Mr. Holmes to radiation caused plaintiffs serious personal injuries and damages.

## V.    PRAYER FOR RELIEF

WHEREFORE having fully set forth her claims against Defendant, Plaintiffs pray for relief as follows:

COMPLAINT FOR DAMAGES - 11



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

A.      For monetary judgment in an amount sufficient to compensate Plaintiffs for the damages they suffered as a result of the described incident;

B.      For prejudgment interest on all liquidated amounts as allowed by law;

C.      For reasonable costs and attorneys' fees incurred herein, pursuant to all applicable statutory, common law, and equitable theories; and

D.      For such other and further relief as the Court deems just and equitable.

Dated this 24th day of May, 2024.

MAXWELL GRAHAM, PS

s/ *Michael A. Maxwell*

Michael A. Maxwell, WSBA # 21781
Attorney for Plaintiffs

MERRICK HOFSTEDT & LINDSEY, PS

s/ *Peter Steilberg*

Peter Steilberg, WSBA # 22190
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES - 12



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM



RECEIVED
JUN 1 7 2024
By_____

IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY

SHANNON "BUCK" PHILLIPS, an individual,
AND DAVID HOLMES, an individual,

                       Plaintiffs,

vs.

ENERGY NORTHWEST, a joint operating
agency in the State of Washington,

                       Defendant.

No.  24-2-11760-1 SEA

SUMMONS

TO DEFENDANT ENERGY NORTHWEST:

A lawsuit has been started against you in the above-entitled court by Plaintiff. Said claim is stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, if served inside the State of Washington (or within 60 days after service, if served outside the State of Washington or service is effectuated on the Secretary of State as provided by RCW 46.64.040), or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what has been asked for because you have not responded. If you serve a Notice of Appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM

1. You may demand that the Plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service on you of this Summons and Complaint will be void. If you wish to seek the advice of any attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Dated this 24th day of May, 2024

MAXWELL GRAHAM, PS

s/ *Michael A. Maxwell*

Michael A. Maxwell, WSBA # 21781
Attorney for Plaintiffs

MERRICK HOFSTEDT & LINDSEY, PS

s/ *Peter Steilberg*

Peter Steilberg, WSBA # 22190
Attorney for Plaintiffs

SUMMONS - 2



MAXWELL GRAHAM
535 E SUNSET WAY
ISSAQUAH, WA 98027
206.527.2000
MAXWELLGRAHAM.COM